TROPICANA PRODUCTS, INC., PLAINTIFF v. UNITED STATES, DEFENDANT

Court No. 82-1-00075

(Dated May 20, 1982 [as amended June 24, 1982, Slip Op. 82-49])

*Baker & McKenzie (William D. Outman, II, Thomas P. Ondeck* and *M. Page Hall, II,* Esqs., on the brief) for the plaintiff.

*J. Paul McGrath,* Assistant Attorney General (*Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, and *Deborah E. Rand,* Esq., on the brief), for the defendant.

*Barnes, Richardson & Colburn (E. Thomas Honey,* Esq., on the brief) for *amicus curiae* Florida Citrus Mutual.

NEWMAN, *Judge.*

## INTRODUCTION

This action poses yet another issue of novel impression flowing from this Court's newly acquired equity powers under the Customs Courts Act of 1980 to order declaratory judgments and injunctive relief. See 28 U.S.C. § 2643(c)(1). Here, on the merits, we are called upon to determine whether dilution of frozen concentrated orange juice in a Customs bonded warehouse is a manufacturing process, which is prohibited by section 562 of the Tariff Act of 1930 (19

U.S.C. § 1562). The resolution of this issue appears to be of substantial importance to the Florida citrus fruit industry, as evidenced by affidavits and an *amicus* brief submitted in this case.

Presently pending before the Court is plaintiff Tropicana's application for a preliminary injunction under rule 65 mandating the United States Customs Service to permit plaintiff to dilute, with water, frozen concentrated orange juice imported from Mexico and Brazil in its class 8 Customs bonded warehouse.[1] In support of its application, plaintiff has submitted an affidavit by its Senior Vice President, David O. Hamrick; while in opposition to the application, defendant has submitted four affidavits by individuals connected with the Florida citrus fruit industry: James Bock, general manager of Winter Garden Citrus Products, Inc., a processor of orange products; Joseph Marshburn, Executive Vice President of Citrus World, Inc., a grower owned processing and marketing cooperative; Bobby F. McKnown, Executive Vice President of Florida Citrus Mutual, a trade organization comprised of more than 13,255 Florida citrus growers; and Herbert M. Riley, Director of the Division of Fruit and Vegetable Inspection, Florida Department of Agriculture and Consumer Services. An additional affidavit was submitted by defendant to the Court under seal, but was made available to plaintiff. No evidentiary hearing was requested or held respecting the instant application, but oral argument was heard on May 12, 1982 pursuant to plaintiff's request.

## BACKGROUND

The instant action covers 119 liquidated entries of concentrated orange juice which, as the merchandise entered plaintiff's bonded warehouse, is described in item 165.35, TSUS.[2] After the importations entered plaintiff's bonded warehouse, the District Director of Customs in Tampa, Fla. issued a permit authorizing Tropicana to convert, by the addition of water, the imported concentrated orange juice of approximately 65 Brix value [3] into orange juice not concentrated of 17.31 Brix value.[4] Following the authorization by Customs, plaintiff processed the 119 entries involved in this action by diluting the imported concentrate with water.

---

[1] A class 8 bonded warehouse is "established for the purpose of cleaning, sorting, repacking, or otherwise changing in condition, but not manufacturing, imported merchandise, under Customs supervision and at the expense of the proprietor." 19 CFR 19.1(a)(8).

[2] The relevant TSUS items read as follows:
Fruit juices, including mixed fruit juices, concentrated or not concentrated, whether or not sweetened:

* * * * * * *

Other:

| | | |
|---|---|---|
| 165.30 | Not concentrated | 20¢ per gal. |
| 165.35 | Concentrated | 35¢ per gal. |

[3] The parties agree that the term "Brix value" refers to the standard measurement used in the citrus fruit industry indicating the amount of soluble solids present in a given juice.

[4] For tariff classification purposes, reconstituted orange juice (or orange juice from concentrate) which has a Brix value of 17.31 or less is classifiable as unconcentrated orange juice under item 165.30, TSUS, dutiable at 20 cents per gallon.

However, it further appears that subsequent to the dilution of the 119 entries, Customs issued a ruling on August 7, 1981 determining such dilution process to be manufacturing, and hence not permissible under section 562. Thereafter, Customs at Tampa liquidated the 119 entries and assessed duty under item 165.35, TSUS, at the rate of 35 cents per gallon, based upon the concentrated condition of the merchandise as it entered plaintiff's bonded warehouse. Plaintiff filed a protest against these liquidations, which was denied.

Additionally and in order to preserve its right to a refund of duties paid on the current importations in the event of an eventual favorable decision on the merits of the present action, Tropicana proposed to Customs that it be allowed to resume diluting unentered imported concentrated juice held in its bonded warehouse under Customs supervision; and more, in order to protect the revenues, plaintiff offered: (1) to pay the higher rate of duty applicable to the concentrated juice in its condition as the juice entered the bonded warehouse and (2) to reimburse Customs for any administrative expense associated with Customs' supervision of the dilution process. On April 23, 1982, the foregoing proposal was disapproved by Customs on the ground that the scheme would violate section 562. Thereupon, plaintiff filed an amended complaint on April 23, 1982 with its motion for a preliminary injunction. Defendant answered the amended complaint on May 3, 1982.

By its motion for a preliminary injunction, plaintiff seeks an order requiring Customs to permit plaintiff to dilute imported concentrated orange juice in its warehouse, as previously proposed to Customs, but rejected. Plaintiff seeks to withdraw the orange juice in diluted form (with a Brix value of 17.3) from its bonded warehouse so that the merchandise could be claimed as properly dutiable under item 165.30, TSUS at the rate of 20 cents per gallon, rather than at the higher rate of 35 cents per gallon applicable to concentrated orange juice under item 165.35.

I have concluded that plaintiff's motion for an injunction *pendente lite* must be denied because plaintiff has not satisfied the established criteria that warrant granting the extraordinary relief sought.

OPINION

I

The courts have long recognized that preliminary injunctive relief is an "extraordinary remedy" (*Asher* v. *Laird,* 475 F. 2d 360, 362 (D.C. Cir. 1973); *Dorfmanns* v. *Boozer,* 414 F. 2d 1168, 1173 (D.C. Cir. 1969)), which extraordinary relief should be granted only

upon a clear showing that the moving party is entitled to the requested relief. *Flintkote Co.* v. *Blumenthal,* 469 F. Supp. 115, 126–27 (N.D.N.Y. 1979), *aff'd.* 596 F. 2d 51 (2d Cir. 1979). See also, *DiJub Leasing Co.* v. *United States,* 1 CIT 42, Slip Op. 80–9, 505 F. Supp. 1113 (1980); 7, Part 2, *Moore's Federal Practice,* ¶65.04[1] (1980).

The relevant factors in considering an application for a preliminary injunction were recently enunciated by the Court of Customs and Patent Appeals in *S.J. Stile Associates Ltd.* v. *Dennis Snyder,* 68 CCPA 27, C.A.D. 1261, 646 F. 2d 522 (1981):

> * * * (1) a threat of immediate irreparable harm; (2) * * * the public interest would be better served by issuing than by denying the injunction; (3) a likelihood of success on the merits; and (4) that the balance of hardship on the parties favored [plaintiff].

And as aptly observed by Judge Maletz in *Zenith Radio Corp.* v. *United States,* 1 CIT 53, Slip Op. 80–10, 505 F. Supp. 216 (1980):

> Recently, the D.C. Circuit in *Washington Metropolitan Area Transit Commission* v. *Holiday Tours, Inc.,* 559 F. 2d 841, 843 (D.C. Cir. 1977), amplified these factors as follows:
>
> > * * * [U]nder *Virginia Petroleum Jobbers* a court, when confronted with a case in which the other three factors strongly favor interim relief may exercise its discretion to grant a stay if the movant has made a substantial case on the merits. The court is not required to find that ultimate success by the movant is a mathematical probability, and indeed, as in this case, may grant a stay even though its own approach may be contrary to movant's view of the merits. The necessary "level" or "degree" of possibility of success will vary according to the court's assessment of the other factors.

See also Chief Judge Re's excellent amplification of the moving party's burden of proof respecting the four relevant factors enumerated in *S.J. Stile Associates, Ltd., supra,* in *American Air Parcel Forwarding Co.* v. *United States,* 1 CIT 293, Slip Op. 81–45, 515 F. Supp. 47 (1981).

Applying the pertinent tests, as enunciated and amplified in the above-cited holdings to the present case:

## II

I have carefully reviewed the moving papers and the affidavit of Mr. Hamrick to determine whether there is a sufficient showing of irreparable injury to plaintiff to warrant the granting of injunctive relief.

Plaintiff claims that it will suffer irreparable injury if pending a decision on the merits, plaintiff is not permitted to dilute imported concentrated orange juice in the bonded warehouse and enter the unconcentrated juice. Essentially, Mr. Hamrick alleges that the im-

mediate use of the warehoused orange juice concentrate is essential
for Tropicana's business operations inasmuch as sufficient quanti-
ties of suitable juice from domestic sources "are not currently
available to plaintiff because of the recent freeze in Florida".

Continuing, plaintiff maintains that if it now withdraws the re-
quired juice from the warehouse in concentrated form, plaintiff
will forfeit its right to judicial review respecting the classification
of the entries of concentrated juice liquidated under item 165.35,
TSUS. In sum, then, plaintiff argues that inadequate supplies of
suitable orange juice raw material in the domestic market preclude
storage of the imported concentrate in its bonded warehouse until
a decision, however expedited, can be reached on the merits; and
that in the event plaintiff must withdraw the imported concentrate
from its warehouse in such condition, its classification claim under
item 165.30, TSUS, will be lost.

The sole underpinning for plaintiff's case respecting the issue of
irreparable injury is Mr. Hamrick's affidavit in which the factual
averments are couched in vague and conclusory terms. For exam-
ple, paragraph 7 of the Hamrick affidavit asserts in vague conclu-
sory terms that "because of a freeze in Florida in the winter of
1981–82, Tropicana now has an *inadequate supply* of orange juice
raw material of *required quality* to produce *sufficient quantities* of
orange juice products to meet Tropicana's *needs*" (emphasis added).
The Court has not been apprised as to what quantity of orange
juice raw material plaintiff would consider as "adequate"; what
quality plaintiff requires in terms of specific color, taste or other
relevant standards; or what plaintiff regards as "sufficient" quanti-
ties for production to meet its "needs". Similarly, paragraph 9 of
the Hamrick affidavit alleges in broad conclusory terms that "be-
cause of the *inadequate supply* of orange juice of the *required qual-
ity,* Tropicana has ordered since January, 1982, 110,000 drums of 65
Brix orange juice from foreign sources" (emphasis added).

In paragraph 20, Mr. Hamrick states that "in order to produce
an acceptable orange juice product for the retail market, Tropicana
must blend lower Brix value to acid ratio orange juice with the
higher Brix value to acid ratio juice Tropicana has on hand." But
plaintiff does not disclose the quantity of lower Briz value to acid
ratio orange juice plaintiff needs for blending.

In paragraph 22, Mr. Hamrick avers that "sufficient quantities of
domestic orange juice raw material with a Brix value to acid ratio
of lower than 15:1 are not currently available to Plaintiff because
of the recent freeze in Florida." But Mr. Hamrick does not reveal
specifically the quantities of suitable orange juice raw material re-
quired by Tropicana, nor give any indication of what efforts, if any,
were made by plaintiff to acquire such raw material.

Finally, in paragraph 25, Mr. Hamrick submits a vague allega-
tion that "severe disruption of the commercial market for Tropi-
cana's orange juice" will result "if the imported orange juice is not

used in the production of Tropicana's orange juice products for retail sale." Absent a more explicit showing, this bare allegation is speculative, at best. No facts or figures are disclosed respecting the actual extent and nature of the business loss Tropicana could reasonably expect absent immediate use of the imported merchandise.

In brief, Hamrick's affidavit leaves too many unanswered questions on matters going to the heart of plaintiff's burden of showing a threat of irreparable injury to justify the extraordinary remedy of a preliminary injunction. In contrast to Hamrick's affidavit, which is vague and conclusory, defendant has submitted five opposition affidavits which show explicitly the availability of suitable orange juice raw materials to meet plaintiff's needs.[5] Under all the facts and circumstances, I find that plaintiff has failed to sustain its burden of proof on the issue of irreparable harm.

### III

While a supporting affidavit may afford the basis for a preliminary injunction, "if the facts so appearing consist largely of general assertions which are substantially controverted by counter-affidavits, a court should not grant such relief unless the moving party makes a further showing sufficient to demonstrate that he will probably succeed on the merits." *K-2 Ski Company* v. *Head Ski Co.*, 467 F.2d 1087 (9th Cir. 1972). Significantly, plaintiff has failed to show a probability of success on the merits.

Central to the dispute on the merits is the construction of the term "manufactured" as used in section 562 (19 U.S.C. § 1562). Specifically, the issue is whether the dilution of concentrated frozen orange juice with water reducing its Brix value from 65 to 17.3 in a class 8 Customs bonded warehouse is a permissible "change in condition" or a prohibited manufacturing operation under section 562 of the Tariff Act of 1930. The amended complaint, filed on April 23, 1982, seeks *inter alia* a declaratory judgment on this issue which would apply to: entries that have been liquidated and protested; entries that have not been liquidated; diluted orange juice that has not yet been entered; and orange juice that has not yet been diluted in the Customs bonded warehouse.

While the term "manufactured" as used in the context of section 562 has not been construed by the courts, there are a number of illuminating judicial precedents interpretating that very term as it appears in other provisions of the tariff laws. In short, I am unable to find that plaintiff has made the requisite showing of probability of success on the merits. And the cases hold that where there is no clear showing of threat of irreparable injury, probable success on the merits has particular importance. *208 Cinema, Inc.* v. *Vergari,*

---

[5] "Preliminary injunctions frequently are denied if the affidavits are too vague or conclusory to demonstrate a clear right to relief under Rule 65". Moreover, "a motion for a preliminary injunction supported only by written evidence usually will be denied when the facts are in dispute." Wright and Miller, *Federal Practice and Procedure,* § 2949, pp. 470, 475 (1973).

298 F. Supp. 1175 (S.D.N.Y. 1969) and *Hershey Creamery Co.* v. *Hershey Chocolate Corp.,* 269 F. Supp. 45 (S.D.N.Y. 1967).

In light of the conclusions reached, we need not discuss the contentions of defendant that injunctive relief may not be had against the sovereign United States; and that plaintiff's application should be denied since the delegates of the Secretary of the Treasury were not named in the action. Furthermore, we need not reach the arguments of *amicus curiae* that: issuance of an injunction would contravene the provisions of 19 U.S.C. § 1311 and 19 CFR 19.15(a) if defendant prevails on the merits; that posting of a bond for higher duties would be inadequate in light of 19 CFR 19.15(g)(1) if the government prevails on the merits; and that the procedure for withdrawal from warehouse proposed by plaintiff is not permissible under section 562 and 19 CFR § 19.11(g).[6]

For the reasons stated, it is hereby ORDERED that plaintiff's application for a preliminary injunction is denied.

---

[6] Parenthetically, I wish to stress that no negative inference is to be drawn from any of the conclusions in this opinion respecting the quality of Tropicana's excellent products.