ZENITH RADIO CORPORATION, et al., Plaintiffs,

v.

UNITED STATES, et al., Defendants.

Consolidated Court No. 81–6–00734.

United States Court of International Trade.

Nov. 18, 1982.

Frederick L. Ikenson, P.C. by Frederick L. Ikenson, Washington, D.C., for Zenith.

Dept. of Justice, Commercial Litigation Branch by Shiela N. Ziff, Joseph I. Liebman, New York City, for the United States.

Collier, Shannon, Rill & Scott by Paul D. Cullen, Paul C. Rosenthal, Washington, D.C., for COMPACT.

Arent, Fox, Kintner, Plotkin & Kahn by Robert H. Huey, Washington, D.C., for intervenors Toshiba Corp., Toshiba America, Toshiba Hawaii, Inc.

Baker & McKenzie by Thomas P. Ondeck, Washington, D.C., for intervenors Mitsubishi Electric Corp. and Mitsubishi Electric Sales America, Inc.

Weil, Gotshal & Manges by Stuart M. Rosen, New York City, for intervenors Victor Co. of Japan, Ltd., U.S. JVC Corp., Matsushita Electric Industrial Co., Ltd., Panasonic Co. and Quasar Co., Panasonic Hawaii, Inc. and Panasonic Sales Co.

Tanaka, Walders & Riter by Lawrence R. Walders, Patrick O'Leary, New York City, for intervenors Nippon Electric Co., Ltd. and NEC; Hitachi Ltd., Hitachi Sales Corp. of America, and Hitachi Sales Corp. of Hawaii.

Wender, Murase & White by Peter J. Gartland, Robert D. Pilliero, New York City, for intervenor Sharp Electronics Corp.

Siegel, Mandel & Davidson, P.C. by Brian S. Goldstein, New York City, for intervenor General Corp. of Japan.

*Memorandum Opinion and Order*

LANDIS, Judge:

In this action brought pursuant to section 751(a) of the Tariff Act of 1930, as amended (19 U.S.C. § 1675(a)), plaintiff Zenith Radio Corporation (Zenith) moves to preliminarily enjoin the defendants from liquidating any entries of television receivers entered or withdrawn from the warehouse for consumption during the period April 1, 1979 through and including March 31, 1980 which are subject to T.D. 71–76 other than those produced by Orion Electric Co., Ltd. and exported by Otake Trading Co., Ltd. The particular annual review decision in issue was published in the *Federal Register* on June 5, 1981, 46 Fed.Reg. 30163. Defendants and defendant intervenors oppose Zenith's motion and each have filed memorandums in opposition thereto.

Zenith basically claims that if the impending liquidations are not enjoined it will be irreparably injured in that it will have lost its right to judicial review and its competitors will have been erroneously assessed no or *de minimis* amounts of antidumping duties. It further claims that it has a substantial likelihood of success on the merits and that no substantial harm would result to other parties. Finally, Zenith argues that it is in the public interest that Commerce faithfully execute the laws enacted by Congress and that the court not be ousted of its jurisdiction by having the case become moot.

Defendants and defendant intervenors argue that liquidation of the involved entries will not render this action moot. They argue that liquidation pending judicial review is the rule rather than the exception and is consistent with Congressional intent and statutorily provided by Section 516A(c)(1) as amended (19 U.S.C. § 1516a(c)(1)).

Defendants further argue that Section 751(a), (19 U.S.C. § 1675(a)) has a dual purpose in that it establishes (1) the basis for the assessment of antidumping duties on entries of the merchandise included within the determination *and,* (2) the basis for the deposit of estimated duties on entries of such merchandise on or after the date of publication of that final determination pending completion of the next annual administrative review proceeding. Defendants argue that the next annual review proceeding pursuant to 751(a) (involving post March 31, 1980 entries) are pending and cannot be liquidated until the instant 751(a) annual review is completed and the final determination published. Therefore, defendants state Zenith's right to review of the issues raised in its pleading is fully preserved.

A preliminary injunction is an extraordinary remedy that should not be routinely granted. *Medical Society of the State of New York v. Toia,* 560 F.2d 535, 538 (2nd Cir.1977); *Flintkote Company v. Blumenthal,* 469 F.Supp. 115, 125–126 (N.D.N.Y. 1979), *aff'd* 596 F.2d 51 (2nd Cir.1979); Wright & Miller, *Federal Practice & Procedure: Civil,* § 2948. It is now well established that generally four conditions must be met before a preliminary injunction is granted. There must be a threat of immediate irreparable harm; a showing that the public interest would be better served by issuing than by denying the injunction; that there is a likelihood of success on the merits; and that the balance of hardship on the parties favors the party seeking injunctive relief. *S.J. Stile Associates Ltd., et al. v. Dennis Snyder, et al.,* 68 CCPA ——, C.A.D. 1261, 646 F.2d 522 (1981); *Asher v. Laird,* 475 F.2d 360 (D.C.Cir.1973); *American Air Parcel Forwarding Company, Ltd., A Hong Kong Corporation v. United States,* 1 Ct. Int'l. Trade 293, 515 F.Supp. 47 (1981); *PPG Industries, Inc. v. United States, et al.,* 2 CIT —— Slip Op. 81–59 (July 6, 1981). The burden of establishing a right to injunctive relief by demonstrating that irreparable injury will result absent such relief falls squarely upon the party seeking the injunction *Joseph Bancroft & Sons Co. v. Shelley Knitting Mills, Inc.,* 268 F.2d 569 (3rd Cir.1959).

A review of the papers in support of the preliminary injunction and other documents and papers filed in this action indicates that plaintiff Zenith (hereinafter

plaintiff) has not sufficiently met its burden of establishing its right to a preliminary injunction.

In antidumping proceedings liquidation is specifically provided for in 19 U.S.C. § 1516a(c)(1) and the enjoining of such liquidation is specifically provided for in 19 U.S.C. § 1516a(c)(2). The court must look to the intent of Congress in enacting these two sections when considering injunctive relief in antidumping cases.

Plaintiff baldly alleges that liquidation in the instant case would essentially moot the case and oust the court of jurisdiction. Plaintiff gives no concrete explanation for its assertion. Presumably, plaintiff believes that once liquidation occurs it will be unable to enforce higher antidumping duties on the imported merchandise. However, this premise would be true in every antidumping action brought before the court. The consequences of liquidation in every 751(a) review action and every antidumping duty action applies equally to all. Under plaintiff's argument, any liquidation prior to a final decision of this court would constitute irreparable harm *per se* and would therefore qualify every litigant contesting an antidumping determination for a preliminary injunction provided the other factors necessary for an injunction were met.

■ Plaintiff's position is in clear conflict with the wording and format of 19 U.S.C. § 1516a(c)(1) and (c)(2). 19 U.S.C. § 1516a(c)(1) clearly provides for liquidation of entries of the merchandise in accordance with the determination of the administering authority. This is the general rule to be used in the normal course of events.

Congress, however, did see fit to carve out an exception to liquidation by enacting 19 U.S.C. § 1516a(c)(2) which provides for enjoining liquidations upon a proper showing by an interested party that it should be

granted such relief under the circumstances.

■ It is at once apparent that had Congress desired to make liquidation an element of irreparable harm *per se* it would have done so by specifically providing that no liquidation of entries of imported merchandise take place until a final decision of the Court of International Trade. Rather, Congress carved out a narrow exception with stringent guidelines to be met before enjoining liquidation.[1]

Instructive on this point is the legislative history accompanying the Trade Agreements Act of 1979. Specifically, S.Rep. No. 96–249, 96th Cong., 1st Sess. 253 (1979), U.S.Code Cong. and Admin.News, pp. 381, 638–639.

Section 516A will remedy this problem by empowering the court to issue an injunction restraining liquidation while the litigation is pending. However, due to the commercial uncertainty relating to the suspension of liquidation, section 516A specifies certain factors which the court must take into account before injunctive relief may be issued and makes the grant or denial of injunctive relief immediately appealable. *These factors are specified in the statute so as to make it clear that the issuance of injunctive relief is truly an extraordinary measure and that the relief should not be granted in the ordinary course of events.* (emphasis supplied.)

Although Congress repealed the four enumerated criteria (footnote 1, infra) it did not repeal its basic intent that enjoining liquidation in an antidumping proceeding should not be granted in the ordinary course of events. Had the intent been otherwise Congress would have enacted legislation withholding liquidation until a final decision by this court.

Recent case law sheds additional light on this subject. In *Smith-Corona Group, Con-*

---

1. As originally enacted, § 516A(c)(2) as added July 26, 1979, Pub.L. 96–39, Title X, § 1001(a), specifically enumerated four criteria to be met before an injunction enjoining liquidation could issue. These criteria, in effect closely parallel the criteria formulated for issuing a preliminary injunction generally.

In 1980, this statute was amended, See Pub.L. 96–417, §§ 601(7), 608(c), deleting the enumerated criteria as the Customs Court Act of 1980 renamed and gave full equity powers to this court.

*sumer Products Division, SCM Corporation v. United States et al.*, 1 CIT 89, 507 F.Supp. 1015 (1980), Judge Newman granted plaintiff's application to enjoin liquidation of entries (covering a span of four months) pending final determination of the antidumping suit by the court. In so doing Judge Newman found that plaintiff successfully carried his burden of meeting the four criteria for injunctive relief.

Most instructive is the finding that plaintiff would suffer irreparable harm absent the enjoining of relief. Specifically, the court stated:

> Additionally, I find that plaintiff would suffer irreparable harm if liquidation of the entries covered by the early antidumping determination were not enjoined. It appears that in 1980 plaintiff has continued to experience substantial adverse operating results in its PET business, at least partly due to the less than fair value sales by the Japanese manufacturers. To buttress its argument that injunctive relief is necessary to prevent irreparable harm to its PET business, plaintiff cites statistics showing that increased imports of PETs from Japan in 1980 over 1979 have captured an additional share of the market this year at the expense of plaintiff. Moreover, plaintiff's statistics demonstrate that plaintiff continues to suffer a decline in: operating income, return on net sales, production and United States sales. Plaintiff has also shown that its inventories of United States produced PETs have substantially increased, and that there has been a continuation of price suppression.

> It further appears from an affidavit executed by plaintiff's vice-president and general manager that substantial numbers of Japanese made PETs imported earlier this year remain in inventory. Liquidation of the subject entries prior to the final decision in this case would allow any inventoried units to escape the imposition of the correct amount of antidumping duties if plaintiff prevailed on any of the contested adjustments to the foreign market value.

*SCM, supra* at 1022–1023.

Thus, in *SCM* the court did not simply enjoin liquidation because it would cause irreparable harm *per se.* Rather, the injunction issued after plaintiff's detailed showing of harm to its business backed up by statistics ranging from operating income, sales and production to remaining inventory of Japanese portable electric typewriters (PETs). *SCM* presented a far greater degree of proof than mere surface arguments regarding liquidation *per se.*

As above stated, plaintiff relies heavily upon the mere fact of liquidation *per se* as the grounds for irreparable harm. There is no detailed showing of the nature of this harm nor are any facts or statistics submitted with the motion that would approach the character of the evidence submitted in *SCM, supra.* In passing 19 U.S.C. § 1516a Congress did not envision the mere fact of liquidation to be the cornerstone for injunctive relief. Indeed, the statutory language and legislative history clearly bear out the fact that Congress anticipated enjoining liquidation to be the rare exception established only by concrete proof rather than an automatic response granted by the court.

Accordingly, plaintiff's motion for a preliminary injunction is, in all respects, denied.